Good morning. May it please the court. Mahogany Reed for the United States. Zachary Richter with me at council table. Sections 922 G3 and D3 temporarily prohibit firearm possession by and the transfer of firearms to unlawful drug users for as long as they choose to illegally use controlled substances, during which time they present a heightened risk of danger to others if armed. Those provisions thus fit comfortably within our nation's historical tradition of firearm regulations, which authorize legislatures to prohibit firearm possession by categories of individuals whose possession presents a special danger of misuse. The district court erred in holding that sections 922 G3 and D3 facially violate the Second Amendment, and the court prematurely resolved Ms. Connelly's as-applied challenge to section 922 G3. So we're asking that this court reverse the district court's facial determinations and vacate and remand Ms. Connelly's as-applied challenge for resolution after additional proceedings below. I want to start by addressing how the Supreme Court's decision in Rahimi bears on the questions presented here. We started to explain some of the more salient lessons from Rahimi in our supplemental letter brief, but a few of them, I think, bear emphasis. The first is that the Supreme Court clarified that where a gun regulation is consistent with the principles that underpin the Second Amendment, it is constitutional. That's in keeping with the court's instruction in Bruin that the purpose of the text and history framework is to delimit the outer bounds of the Second Amendment and to determine whether a firearm regulation is consistent with the Second Amendment. Second, the Supreme Court instructed us to derive those historical principles by determining what the historical evidence supports when considered together, rather than asking how each analog, when considered in isolation, measures up to a modern regulation. And finally, the court reminded us not to place dispositive or even undue weight on the absence of a precise historical analog. Justice Barrett's concurring opinion in Rahimi described some of the problems with treating legislative silence as constitutionally significant, including that that approach assumes that founding-era legislatures maximally exercise their power to regulate and has the effect of stifling innovative solutions to distinctly modern societal problems. Under a proper application of Rahimi, Sections 922G3 and D3 are facially constitutional. Those provisions are consistent with the principle that the government may prohibit firearm possession by those who present a heightened risk of danger if armed. We highlighted in our brief the common law tradition of prohibiting individuals from going armed, reflected most notably in the Statute of Northampton and adopted by the states, early states' disarmament of individuals who refused to swear an oath of loyalty, Second Amendment precursors that contemplated the disarmament of individuals who posed a real danger of public injury, and post-founding laws disarming such individuals support the government's authority to categorically disarm dangerous people. That category of dangerous individuals includes unlawful users of illegal drugs, who courts have widely recognized present a danger if armed. The founding generation was likewise aware of the potential harms caused by mixing intoxicants and guns, and they thus implemented various measures restricting access to firearms by those likely to become intoxicated, including, as we outlined— Is there any difference between ownership and carrying when we look at the statute? When we look at historical laws, we appreciate that there is a difference between ownership and carrying, yes, but we don't think that bears on the constitutionality of Section 922G3 for reasons that we started to explain in our supplemental letter brief, the first being that historical statutes prohibited carrying or using firearms while intoxicated by a legal substance. We think that prohibiting possession of firearms by users of—unlawful users of controlled substances presents issues of potential criminality and additional issues that permit the slightly broader but still temporally limited additional burden on the right. We think that even though those historical regulations prohibited, for example, the carrying of firearms at drinking events or using firearms during the New Year's holiday, that those are still constitutionally significant in that they reflect the founding-era legislature's belief that they could constitutionally prohibit firearm use where it would present a risk of danger to others if armed. I'm still trying to fit—and I know the Supreme Court GVR Daniels, but the rationale of Daniels under Rahimi, when we try—and that seems to be the task that we have before us to some extent—is to try to reconcile those two. I'm still trying to—I'm grappling with the Daniels rationale between ownership and carrying by a person who maybe regularly uses a substance like marijuana, but isn't—as in the facts of this case—wasn't under the influence at the time of the arresting incident. So we don't know what the facts of this case are. All we have at this point are allegations, and so I want to be careful about what I concede about the state of Ms. Connelly's intoxication on the date in question. But to your question, we do think that Daniels' opinion's discussion of the historical intoxication statutes mirrors the methodological errors that the panel in Rahimi made and that the Supreme Court rejected. We think that effectively the Daniels court demanded that the government identify a historical twin, a founding-era analog that likewise prohibited possessing firearms while intoxicated. But we don't think that that was necessary, not only because we don't think that historically the founding generation was preoccupied with the concerns that Congress was concerned with when it passed Section 922G3. Also, we don't think that legislative silence on whether possession and intoxication at the founding is really constitutionally significant because we don't assume, as Justice Barrett emphasized in her concurring opinion and as I alluded to, that legislatures maximally exercise their regulatory authority. Even though the historical intoxication statutes, there is some difference in the scope of them, and we think they do reflect or do have some bearing on the historical inquiry here. So we don't think it's right to wholly disclaim them for those reasons. I think another thing about Daniels was that in assessing the how and why of the intoxication statutes, how those were relevantly similar, it did a couple of things that Rahimi specifically counseled against. First, it considered each analog individually and then determined how and why those historical statutes on their own measured up against Section 922G3. And I think Rahimi is very clear, the Supreme Court's decision in Rahimi is very clear that in assessing the how and why, we're not looking to nitpicky how and why each historical statute to determine whether a modern regulation is on all fours on those metrics. We're instead considering the historical analogs together and determining, making a common sense assessment whether the modern regulation is consistent with the how and why of the modern regulations. And that sort of is my second point, is that it's really important to consider all of the historical dangerousness statutes and regulations. And then we also in our brief discuss historical restrictions on the mentally ill. We think that combined, those justify Section 922G3 in its full scope, which again, I think bears emphasis, is not a permanent ban on an individual's right to possess arms, but is instead a temporary and limited ban on an individual's right to possess firearms for so long as they are an unlawful user of a controlled substance. Now, because this case presents- Regardless of whether they are under the influence of that substance at the time they are apprehended with a firearm? I think that's right. Yes, 922G3 is not honed in on impairment necessarily, right? It does attempt to account for times between impairment where an individual might possess firearms because of the link between unlawful drug use and criminality. We outline in some detail in our cert petition in Daniels the link between criminality and drug use. For example, drug users often use firearms to sustain their drug habit. They may get in armed confrontations with drug users, endanger police, endanger themselves. So these are all things that could potentially happen for so long as an individual is engaged in or is connected to that. How would the statute operate in some place like Colorado that has much more liberal marijuana usage laws? Of course, we're talking about a federal law here that would apply. Would the state law have any type of impact on the enforcement of the statute, or do we just say that anybody who regularly and habitually uses marijuana in the state of Colorado would be considered to be a felon under this section? If they possess a firearm, I think our position is the latter. State law doesn't necessarily have any bearing on whether an individual violates section 922G3 and 922D3. Now, I don't think this court needs to answer those complicated questions. This is a facial challenge, right? So some of your questions about whether the statute would apply if a person is not intoxicated or how it applies to individuals in Colorado. Those are complicated questions that this court doesn't necessarily need to resolve in this case. Well, I'm not suggesting we resolve them, but we certainly need to consider the impact of a ruling that we would make one way or the other. Now, with the benefit of Rahimi from the Supreme Court, I think we need to . . . they want us to look at this from every different point of view that we can imagine in order to render the best opinion we can. Certainly, Judge Englehart, and we think that this court can uphold the statutes, both of them, on their face because we think that they are constitutional in at least some applications. To the extent future cases raise the more complicated issues and as applied posture that's properly before this court, this court can then consider those issues at that point. But I think even . . . Your Honor asked how to reconcile Rahimi with the reasoning in Daniels. As I've explained, we disagree with the reasoning in Daniels for reasons we started to explain here and explained elsewhere. But even under the reasoning in Daniels, we think that the opinion suggests that there are some constitutional applications of the statute. The district court's determination that Section 922G3 and Section 922D3 are unconstitutional on their face is irreconcilable even with the Daniels opinion, which the district court determined in resolving Mr. John Connolly's motion to dismiss Section 922G3 on facial grounds. Speaking of as applied challenges, I do just very quickly want to argue that we think that the district court prematurely resolved Ms. Connolly's as applied challenge to Section 922G3. It's our position that Section 922G3 and 922D3 are constitutional in all of their applications. Obviously, the court may want to leave room in future cases for individuals to raise as applied challenges to the provision. But we don't think that the as applied challenge that Ms. Connolly raises properly before this court because it does turn on issues that require additional factual development to resolve, specifically the nature and extent of Ms. Connolly's marijuana use. All we know at this point, and this is in the complaint at ROA-16, is that Ms. Connolly admitted to using marijuana on a regular basis. There are some facts that suggest that she may have used marijuana on the night in question. For example, when officers entered her home, they smelled the strong odor of marijuana. We don't know what use on a regular basis for sleep and anxiety really means. We think that those issues, to the extent this court thinks there's room for as applied challenges to Section 922G3 and to the extent this court thinks that the nature and extent of Ms. Connolly's drug use or whether she was intoxicated on the night in question are relevant to the constitutional question, then we think that this court should vacate the district court's grant of Ms. Connolly's as applied challenge and remand for additional factual development. Doesn't circuit practice say we have to start with the as applied challenge and not proceed to the facial challenge if the as applied challenge is successful? I think that's right, Your Honor. Our point is that Ms. Connolly's as applied challenge is not properly before this court. We think that had the district court waited to resolve Ms. Connolly's as applied challenge until after all the facts in the district court had settled and the issue were properly before this court, then the court could properly proceed with Ms. Connolly's as applied challenge and not necessarily resolve the facial issue. We think that because there are outstanding factual questions that require a trial or additional factual development to resolve under federal rule of criminal procedure 12B, a vacature and a remand on that question is appropriate. I'm going to ask you something about whether the government has a position and if the government doesn't or you don't know what it is, that's okay, but I'll ask anyway. Obviously, as you know, I'm on the panel for Daniels on remand. The question is, should this panel or should it not await a decision in Daniels? The mandate or the judgment hasn't issued yet in Daniels although we've set a briefing schedule which will be completed in early August. I'll ask Ms. Connolly and counsel the same question. Does the government have a position on whether we should decide this case or in the alternative hold this case awaiting a decision in Daniels? I think that because this case raises facial questions to 922G3 in Daniels is only if I apply challenge, I think we would be fine with the court resolving this case and not waiting for Daniels to resolve it necessarily. I think that's our position. If the court has no further questions, I'll be back for rebuttal. Yes, you've saved time for rebuttal. Thank you, Ms. Reed.  Ms. Tilger? May it please the court. The facts of Ms. Connolly's case present the most innocuous gun possession, that is possession of a gun in one's home and the most innocuous drug usage, I would say, which is usage of marijuana in one's own home. And it's hard to imagine any facts that would be more deserving of an unconstitutional as applied challenge to 922G3. Now I know we just talked about or Ms. Reed just spoke about facially unconstitutional versus as applied. I would just like to point out that Judge Cardone was not completely clear as to whether she was finding G3 unconstitutional in its face or as applied. And you could look at the record that's ROA 239 and Judge Cardone doesn't use the word facial unconstitutionality. She just says that the government's failed to carry its burden to demonstrate that 922G3 is consistent with the nation's historical tradition of firearm regulation. The government, who of course is the appellant in this case, challenged it as both saying Judge Cardone found both on its face and as applied. I don't know that it's clear and I don't honestly know that it matters. What I'm suggesting to you that as applied, it is unconstitutional in the facts of this case. The government conflates some really important concepts in this case, I believe. One of those is they conflate possession, I'm talking about a firearm, with use and carry. And I think this goes to Judge Engelhardt's question a little bit about is there a difference between ownership and carrying. And I believe that's a really important distinction because possession, which is what this statute is about, possession, we know that gun statutes, possession can mean actual possession or constructive possession. That's something we haven't really spoken about, but constructive possession is a basis for conviction under G1. Constructive possession means access and intent to exercise dominion or control over the firearm. If the firearm is in your home, you're possessing it whether it's on the bedside table, whether it's in the kitchen, whether it's in a gun safe in your home, you are possessing it. So it's a very important distinction because we'll talk about historical traditions, but those talk about use and they talk about carrying. They don't talk about having a gun in your home. And I also think this is a really important distinction with Daniels because in Daniels, Mr. Daniels was carrying a gun in his car outside of his home. And the home, as Justice Scalia mentioned in Heller, your Second Amendment rights are most acute there in your home. The right to protect your home and hearth is the most important aspect of a Second Amendment protection. The other aspect that I think the government conflates, the other, I guess, concepts that they conflate are the use of drugs versus active intoxication. And I think they conflate those conveniently, but that was a really important issue in Daniels where the court said that there is no historical precedent for disarming drunkards. So it's one thing to say you're out of the house drunk carrying a gun. There is historical precedent for disarming somebody like that. There is no historical precedent whatsoever. If you have the town drunk, there's no historical precedent at all for the idea that they cannot have a gun in their home. I believe that it's very clear. I know that Daniels was GVR'd, but I think, as I understand, all the pending Second Amendment cases were GVR'd, whichever way they went. So I don't think the fact that it was sent back is any comment on the Supreme Court's feeling about the decision in Daniels. My belief is that they're just saying, we'd like you to reconsider this in light of Rahimi. Please get back to us after you've looked at Rahimi. Well, one significance, obviously, is that it's no longer binding circuit law. Correct. Correct. Which it was when we submitted the briefs in this case. And correct, it is not. We can't just say it's binding. We're done. However, we can look at it and say even under Rahimi it was decided correctly. This court, specifically Judge Smith, talked about the concept of distinctly similar versus relevantly similar, and you went with relevantly similar. You didn't require a historical twin. You went with an analog. You did what Rahimi says you should do. You've already done that. And so for those reasons, I think that Daniels was decided correctly. And whether it's precedent or not, I won't say it dictates, it guides us to the same decision in this case. The government, in their briefing, wants to point to a distinction between the drunkard and an unlawful user of controlled substances. And they say the distinction is that the unlawful user of a controlled substance is doing something unlawful. So it seems to me that that is a little bit of an end run around the idea that you have Second Amendment rights, whether or not you're violating some sort of laws. Rahimi did, I think, put to rest the idea that somebody who might be misbehaving doesn't get Second Amendment rights. And I know we're not talking about somebody who is a convicted felon, and we're not even talking about any felony activity on Ms. Connolly's part. But I think by saying it's different if you're using marijuana because that's unlawful, the government is trying to lump in minor misdemeanor marijuana users with the dangerous convicted felons or the dangerous people that we need to be protected against. I do think Rahimi impacted Daniels and this case in a way that Rahimi said, no, we're not going to use the law-abiding responsible, the language from Heller, that law-abiding responsible people have those rights. We're not using that as a hurdle that you have to pass before you go to the historic analysis. I think they did away with that. I also want to, with respect to the government's idea that unlawful drug users, because it was unlawful, it's different. One is I don't think the government can have it both ways to say that drug users, we have to look at the intoxication cases because those are relevantly similar. But they want to say, but it's different. Which way do they want it? Are they going to say it's similar or are they going to say we need to prevent this group of people from possessing firearms because drug users are just a dangerous category. I think they need to make up their mind which way they're going with that. But I don't really think we can agree that drugs were not a problem at the time of the founding fathers. I understand there wasn't cocaine, there wasn't methamphetamine. I mean, those are issues we don't even need to talk about. I mean, the fact that people didn't smoke marijuana much. There were drugs, there was opium. Opium's been around for centuries. But drugs weren't illegal then. I mean, there were not drug statutes back then. So why wouldn't drug intoxication be treated the same way as alcohol intoxication back then? The founding fathers were not Boy Scouts, and I think honestly Daniels talks about that, the amount of alcohol usage in colonial times. And yet, despite the fact of this alcohol usage, and it was something commented on, it was something I think acknowledged at the time that there was a lot of alcohol usage. We certainly know there were people that were drunks then. Despite that, there was no regulation on people intoxicated with alcohol owning firearms in their homes. And I think that Justice Gorsuch's comment in his concurrence in Mahimi is interesting to this point, because he said when the Second Amendment was ratified, people understood that having an arms-bearing citizenry posed some risk. There is some risk there. But, just as surely they believed that the Second Amendment rights were vital to the preservation of life and liberty. So, when the government says, as I think Ms. Reed said, this is about, you know, that the regulations are consistent with the principles of protecting the community. No, that's not enough. I mean, protecting the community, we could just get rid of guns. I mean, this is about where you set your level of similarity, that we're not going to require historical twin. But you also can't just say, hey, if it's something that protects, if it's something for the security of the community, then that's consistent with the Constitution. That's okay. No, Rahimi said, no, that's not. Actually, Helen Bruin said, no, that's not. Because if that's really the ends justify the means test, if you say we want to enact legislation that will help protect our community, these groups of people shouldn't protect, shouldn't have guns, that would be safer. But that's not what the Constitution says. The Constitution said that it codified previously existing rights to bear arms, individual rights to bear arms. And the restrictions have to be viewed very narrowly. And the ones that we look at today have to be based on some valid restriction at the time of the Second Amendment was codified. I'd like to speak just a little bit about, well, the idea that this case should be remanded. I don't think there's anything it could be remanded for. If we want to remand for information about Ms. Connolly's drug use, she has a Fifth Amendment right, so they can't make her give any more information. She was interviewed when they came to her home. She was interviewed. She was not interviewed as a defendant because they were there because of her husband. And she was interviewed about that and they asked her about drug usage and she said, yes, sometimes I smoke to help me sleep for anxiety. That's her drug usage. They found 1.2 grams of marijuana in her home. She's now a defendant in a criminal case. They can't say, well, tell us, like, did you smoke that night? And by the way, this happened in the morning, so it was not the night of the event. This event, to the extent there was an event, and it's not entirely clear but you can sort of read between the lines of the complaint, it was the morning when the police officers arrived to her home. So I'm not even sure if it's relevant if she smoked the night before or not because we're talking about the morning. But we can't, or rather the government can't require Ms. Connolly to now come forward and give more details. Her husband, I mean, they couldn't make him testify against her, but he also has a criminal case pending against him still. So I don't know what the government can identify would be achieved by a remand for more information. And I appreciate the government's candor in this respect. I want to make sure the court saw in a footnote in the letter brief of June 28th that the government let the court know it's not in the record, but lab results were recently disclosed and there was not psilocybin mushrooms in her home. That was tested this year, apparently, and it came back negative. So to the extent the court might think a remand would be appropriate to find out about that, that's a non-issue at this point. So I don't think the government can point to any factual issue that could be further developed with a remand. I want to speak very briefly about the G3 conviction, which is count two. And I understand why it seems that Judge Cardone found count one, the D3 unconstitutional on its face, because in the language she used in finding D3 unconstitutional, she said it would be an end runabout around the unconstitutionality of G3 if I didn't also find D3 unconstitutional. She also specifically said on its face, I can't say that, I'm sorry, as applied, I can't say that D3 is unconstitutional because, and this is the, excuse me, the sale or otherwise dispose of firearms Ms. Connelly was charged with doing that to her husband. And Judge Cardone said there was some evidence that her husband was using drugs. So she specifically did not find it unconstitutional as applied. But interestingly, we raised Ms. Connelly's Second Amendment rights on count two. She has guns in her home. It is the marital home. I actually think, and we didn't talk about this, but if she owns these guns and they're purchased during the time of marriage, her husband already owned them as well. Her husband already had access to them. There's really probably judgmental issues on other grounds. But with respect to the constitutionality, Judge Cardone, as to count two, found it based on Mr. Connelly's Second Amendment rights, finding that on its face, if D3 were allowed to stand, it would be an end run around G3. I will tell the court, I don't think it matters exactly why Judge Cardone found that unconstitutional. I felt the stronger argument was that it impaired Ms. Connelly's Second Amendment rights, because you're basically saying you can't have a gun in your home if your husband's going to use drugs. And I felt that was the burden on her Second Amendment rights. But either way, it's a de novo review for this court, and the court needs to consider all of those possibilities. I just want to point out one other thing about the D3, is that the statute talks about selling or otherwise disposing. The indictment charged disposed or gave access to her husband. And I know that doesn't really attack the constitutionality of it. That would probably be a judgment of acquittal issue, that their theory was that she gave her husband access to the firearms that were in the home. Your Honors, I would like to address your question about should we wait for Daniels to come out. I don't think so, Your Honor. I think our case, Ms. Connelly's case presents sort of an even clearer distillation of the fundamental principle of can you disarm somebody that uses drugs. Because Daniels had it in his car. He had, I guess, a little marijuana residue, but he had it in his car and admitted being a user. Ms. Connelly's is sort of just even a little further to the spectrum of why the as-applied challenge is so valid, because it's her home. And so for that reason, if anything, I think honestly it would make sense to decide Connelly sooner. As I said, it's a facial challenge versus the as-applied. My concern, obviously, is having it remain dismissive on behalf of Ms. Connelly. I think our as-applied challenge is stronger and I would ask the court to sustain the judge's dismissal on that basis. I don't know if the court has any other questions. Thank you, Ms. Dillinger. Thank you. We noticed that you're court-appointed. We wish to thank you for your willingness to take the appointment and for your good work on behalf of your client. Thank you. Ms. Reed, on rebuttal. Thank you, Your Honor. Just a few quick points. The counsel opposite kept emphasizing that Ms. Connelly has been prohibited from possessing firearms while in her home. The Supreme Court rejected that argument as a basis for finding a statute inconsistent with the Second Amendment. It emphasized that Heller never established a categorical rule that the Constitution prohibits regulations that prohibit firearm possession in the home. And so we don't think that's necessarily a relevant consideration where this court thinks that the statutes are otherwise constitutionally applied. A quick point on the D-3 issue. I do want to emphasize that the district court's reasoning in finding Section 922 D-3 facially unconstitutional is plainly incorrect. Ms. Connelly has been charged with providing firearms to her husband while he was high on crack cocaine, shot through his neighbor's door with a shotgun, and we think that that is clearly an instance in which the statute allegedly did those things. We think that's clearly an instance in which that statute should be constitutionally applied, and by bypassing Ms. Connelly's as-applied challenge to find a statute facially unconstitutional, we think was incorrect. Counsel opposite suggested that Ms. Connelly would be prohibited from possessing firearms in her home if the rule were that she cannot dispose of firearms to her husband. We don't think that's right. The case law makes clear that possession and disposition or disposing of firearms are two different sets of conduct. If Ms. Connelly weren't otherwise disqualified from possessing firearms because of her own drug use, she could possess firearms in her home so long as she locked them up. But as the criminal complaint makes clear, the firearms were, the home was in disarray with firearms. Most of the firearms were on Mr. Connelly's side of the master bedroom. He had two firearms on his person, and there was a firearm locked in a safe that Ms. Connelly did not know the code to. So we can assume that Mr. Connelly had access to that one as well. So we think that the statutes are reconcilable and can be constitutionally applied alongside each other. The last point I wanted to make was that counsel opposite suggested that there's no additional information to decide on remand. We think that's unclear at this point. There are at least a few witness that may have some testimony to offer that bears on the questions of the extent of Ms. Connelly's drug use and whether she possessed while intoxicated to the extent this court thinks those questions are relevant. But I think all of the counsel opposite's questions about the facts below are still subject to additional development. We highlighted in our supplemental letter brief that the facts are still developing. The question about the suspected psilocybin has been confirmed. But we think that all of these questions are best resolved after additional proceedings below. If the court has no questions, we ask that you reverse and vacate in part. Thank you, Ms. Reed. Your case and all of today's cases are under submission and the court is in recess until 2 o'clock this afternoon.